UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| EMANUEL JOHNSON, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 02-1745 (RMU) |
| | : | | |
| v. | : | Document No.: | 51 |
| | : | | |
| JOHN ASHCROFT *et. al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

This case comes before the court on the defendants' motion for summary judgment. The *pro se* plaintiff is an African-American former special agent with the Federal Bureau of Investigation ("FBI"). The plaintiff alleges that the defendant maintained a racially discriminatory hostile work environment that led to his constructive discharge. The defendant argues that the plaintiff's claims are barred by res judicata and moves the court for summary judgment. Because the court concludes that the plaintiff's claims are barred by previous settlement agreements, the court grants the defendants' motion for summary judgment.

1

## II. BACKGROUND

### A. Factual History

The plaintiff, an African-American man, was employed as a special agent for the Department of Justice ("DOJ"), FBI, between January 15, 1973 and May 3, 1999. Am. Compl. ¶¶ 18-19. In 1991, the plaintiff, along with other African-American special agents, brought a class action suit before Chief Judge Hogan in this court. *Id.* at ¶ 121. That lawsuit, known as the BADGE lawsuit, settled on October 14, 1993, when the court approved a settlement agreement. *Id.* at ¶ 123. Under the terms of the BADGE settlement agreement, the plaintiff class waived any then-pending claims arising out the defendant's discriminatory employment practices. Defs.' Mot., Ex. 4 ("1993 Settlement Agreement") at 55. The 1993 Settlement Agreement also provided a mechanism for bringing any retaliation claims that might arise as a result of the plaintiffs' participation in the BADGE suit. *Id.* at 58-60. In 2000, the parties amended the settlement agreement, Defs.' Mot., Ex. 5 ("Mediation Settlement Agreement") at 1, to "resolve all outstanding class issues related to promotions, discipline, and performance evaluations raised by plaintiffs in mediation," Defs.' Mot., Ex. 6 ("Notice of Proposed Mediation Settlement Agreement") at 4.

After the BADGE lawsuit settled, the plaintiff brought another lawsuit, *Johnson v. Reno*, 93-cv-2234, before Judge Jackson in this court, alleging retaliation based on his role as the lead plaintiff in the BADGE suit. Am. Compl. ¶ 223; Defs.' Mot. at 7. The parties settled the suit on June 1998. Defs.' Mot. at 5. The suit was based on Equal Employment Opportunity Commission ("EEOC") complaint F-89-4155. *Id.*

In addition to EEOC complaint F-89-4155, the plaintiff brought five other EEOC

complaints under the auspices of the BADGE settlement agreement, namely: (1) F-95-4707, filed on December 14, 1994, (2) F-95-4607, filed on May 31, 1995, (3) F-96-4784, filed on January 16, 1996, (4) F-96-4881, filed on October 22, 1996, and (5) F-97-4967, filed on May 9, 1997. Defs.' Mot. at 7.  According to the defendants, all five EEOC complaints were "administratively closed." *Id*.  The plaintiff subsequently re-filed F-97-4967 as F-97-5049 on September 19, 1997. *Id.*; Defs.' Mot., Ex. 19.  The plaintiff does not dispute that the factual basis for the five EEOC complaints and the BADGE lawsuit are "identical to those filed by Plaintiff in the instant action." Defs.' Mot. at 7.  The plaintiff also filed a seventh EEOC charge, F-97-5073, on November 3, 1997.  Defs.' Mot., Ex. 12; Defs.' Mot., Ex. 19.

On December 4, 2000, the DOJ's Complaint Adjudication Office examined the claims in F-97-5049 and F-97-5073 and concluded that "the evidence does not support complainant's claim that he was discriminated against because of his race or prior EEOC activity."  Defs.' Mot., Ex. 12.  The plaintiff appealed the agency's decision, but on May 30, 2002, the Equal Opportunity Commission ("EEOC") affirmed the DOJ's decision.  Defs.' Mot., Ex. 19.  On September 6, 2002, the EEOC denied the plaintiff's request for reconsideration and notified the plaintiff of his right to file a civil action.  Defs.' Mot., Ex. 20.

### B.  Procedural History

The plaintiff filed this civil action on September 3, 2002, and he amended his complaint

on August 11, 2003.  In contrast to the fifth and sixth EEOC charges,[1] the plaintiff in this action alleges that the defendant subjected him to a hostile work environment throughout his 26-year[2] career at the FBI.  The plaintiff claims that the hostile work environment led to his constructive discharge.  Am. Compl. ¶¶ 19.  Approximately a month after the plaintiff amended his complaint, the defendants filed a motion to dismiss, arguing that the plaintiff failed to exhaust his administrative remedies.  In its January 12, 2004 memorandum opinion, the court declined to dismiss the action because at least one of the alleged acts took place within the statutory period.  The court, however, emphasized that it was not expressing any opinion as to whether the plaintiff had proven that an actionable hostile environment existed.  The court now turns to the defendants' motion for summary judgment.

### III.  ANALYSIS

**A.  Legal Standard for a Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

---

[1] The plaintiff does not dispute the defendants' claim that the gravamen of the fifth and sixth Equal Employment Opportunity Commission ("EEOC") charges is discrimination based on the following facts: (1) the plaintiff's 1997 "Fully Successful" performance evaluation, (2) the plaintiff's transfer to another squad, (3) the denial of the plaintiff's request to attend a training seminar in September 1997, (4) the removal of some of the plaintiff's supervisory authority, and (5) the reassignment of all cases from police officers on the plaintiff's former squad to special agents on the squad. Defs.' Mot. at 11.

[2] Although both parties assert that the plaintiff had a 27-year career at the FBI, Pl.'s Opp'n at 3, Defs.' Mot. at 12, the plaintiff's employment began in 1973 and ended in 1999. Am. Compl. ¶ 19.

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Court Grants the Defendants' Motion for Summary Judgment

The defendants argue that the plaintiff "*voluntarily relinquished* the right to bring *any Title VII claims*" against the FBI when he signed the 1993 and 1998 settlement agreements. Defs.' Mot. at 6-7 (emphasis in original). The plaintiff, on the other hand, argues that the 1993 and 1998 settlement agreements only relinquished his right to bring a claim based on the legal issues raised in the lawsuits underlying those settlements, stating that the two settlements only barred his right to bring renewed claims of "class-wide 'disparate impact,'" and discriminatory non-promotion. Pl.'s Opp'n at 26, 27, 29-30. Because the terms of the settlement agreements explicitly bar any future claims based on the facts underlying the complaints, the court concludes that the plaintiff's claims are barred by res judicata.

### 1. Legal Standard for Res Judicata

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants. *NextWave Pers. Commc'n, Inc. v. Fed. Commc'n Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001) (citing *id.*); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983). Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude

relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

### 2. The Plaintiff's Claims are Based on Conduct Occurring Before 1998

The plaintiff argues that "[t]he issues presented in this hostile work environment claim are totally different from those presented in the [1993 and 1998] agreements." Pl.'s Opp'n at 26. According to the plaintiff, the legal issue in the 1993 BADGE agreement was "class-wide 'disparate-impact,'" *Id.* at 26, and the legal issue in the 1998 settlement agreement was "solely discriminatory promotion." *Id.* at 27. The plaintiff further submits that the defendant is using the settlement agreements "as a snare for plaintiff and [to] deny him the chance to have his claim judged on the merits." *Id.* at 41.

#### a. The 1993 BADGE Settlement Agreement

The 1993 court-approved settlement was signed on October 14, 1993. *Id.* at 30-31. According to the Mediation Settlement Agreement, the settlement "resolved a number of allegations of discrimination against black Special Agents in the FBI's employment policies and practices." Mediation Settlement Agreement at 1. Specifically, signatories to the 1993 BADGE

settlement did not waive any retaliation claims that might arise subsequent to the settlement's signing. *Id.* at 57. The plaintiff class, however, did waive claims of "disparate impact . . . for which relief was awarded." *Id.*

Moreover, the parties signed a settlement agreement amendment, which was approved by the Judge Hogan on May 17, 2000, and which applied retroactively to October 14, 1998. *Id.* The amendment to the BADGE settlement agreement also contained a waiver provision releasing the defendants "from any additional liability based on any and all claims and causes of action which have been, could have been or will be asserted in this case." *Id.* at 13. The amendment to the agreement additionally states that it constitutes "full and final satisfaction of any and all claims and demands, of whatever nature, the plaintiffs, or the plaintiff class . . . had or may hereafter acquire against the defendant . . . with respect to the incidents, claims or circumstances giving rise to and/or alleged in the above-captioned action." *Id.* The purpose of the amended settlement agreement was to "resolve all outstanding class issues related to promotions, discipline, and performance evaluations raised by plaintiffs in mediation." Notice of Proposed Mediation Settlement Agreement at 4.

The plaintiff does not dispute that the factual basis for the BADGE lawsuit and the subsequent settlement is the same as the factual basis for the instant action. The plaintiff, however, argues that the instant action involves a different legal claim. Pl.'s Opp'n at 26-27. Specifically, the plaintiff contends that the BADGE settlement and the amended settlement only addressed disparate impact claims, whereas his current action is a hostile work environment claim. *Id.* But, legal arguments based on the same facts as a previously-adjudicated claim are barred by res judicata. *Apotex, Inc. v. Fed. Drug Admin.*, 393 F.3d 210, 218-19 (D.C. Cir. 2004)

8

(explaining that res judicata bars a party from raising a new legal argument when there are no new facts).  The plaintiff, moreover, ignores the plain language of the BADGE settlement and the subsequent amendment, which releases the defendant from liability based on any claim or cause of action that could have been asserted during the mediation process.  Accordingly, the legal claims stemming from the conduct alleged in the BADGE lawsuit are barred by res judicata.

### b. The 1998 Settlement Agreement

The plaintiff asserts that the 1998 settlement agreement, which settled the claims in Civil Action 93-2234, "did not remotely refer to any other actions that could have been brought on or before June 9, 1998."  Pl.'s Opp'n at 28-29.  The language on the face of the agreement, however, contradicts the plaintiff's statement.[3]  The 1998 settlement agreement states that the plaintiff agreed "to release and forever discharge" the defendant from liability for any claim "which were or could have been raised on or before the effective date" of the agreement.  Pl.'s Opp'n, Ex. EE ("1998 Settlement Agreement") at 2.  According to the settlement agreement, the release applies to new claims "based on the allegations or the subject matter of: (i) this action, including, but not limited to, claims made pursuant to Title VII . . ., and (ii) any related allegations or claims . . . regarding actions by the Agency."  *Id.*  In short, the 1998 settlement agreement provides for a broad release of all claims related to the defendants' alleged discriminatory practices before 1998.  Neither does the agreement reserve the plaintiff's right to bring a suit arguing a different legal theory that is based on the same facts.  This court repeats the

---

[3]   Indeed, the plaintiff's misstatement, which contradicts the plain language of settlement's release provision, recalls Macbeth's lament that a "false face must hide what the false heart doth know."  William Shakespeare, The Tragedy of Macbeth, Act I, Sc. VII.

reasoning expressed by the D.C. Circuit and determines that it has "no cause to read the parties' settlement as something less than it purports to be." *Elmore v. Shuler*, 787 F.2d 601, 602 (D.C. Cir. 1986) (holding that a settlement releasing the defendants from all liability in a civil rights action precluded a subsequent action to collect attorneys' fees in that action).

Furthermore, the complaint filed in Civil Action 93-2234 also alleged race discrimination and retaliation for the plaintiff's participation in the BADGE lawsuit, as well as constructive discharge. Civil Action 93-2234, Compl. ¶¶ 1, 38, 45. In that suit, the plaintiff alleged that he was not selected for a position on the basis of race and as retaliation for his participation in the BADGE lawsuit. Specifically, the plaintiff argued that

> Defendant's FBI Management instituted an unlawful *systemwide retaliatory program* against him *based on his race* with the unlawful purpose being to *force his removal* from the FBI and to destroy his upward mobility within the Defendant. The unlawful artifice has been continuous since its inception and continues in full force and affect to this date.

*Id.* at ¶ 45. (emphasis added). To paraphrase, beginning in 1993, the plaintiff alleged the same acts that he complains of in the instant action, that is, discriminatory retaliation and constructive discharge.[4] Because the plaintiff's claims in the instant action are primarily based on the discriminatory and retaliatory events alleged in the complaint underlying the June 1998

---

[4] The court recognizes that parties may not always be aware of the potential consequences of drafting broad pleadings. Res judicata, however, still applies to bar any claims based on the allegations in Civil Action 93-2234. *Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 837 (2d. Cir. 1991) (explaining that "res judicata may not be avoided on the basis of an overbroad pleading appearing in the initial complaint").

settlement,[5] and are claims that could have been raised before the settlement agreement became effective, the court finds that his claims are barred by res judicata.

The only events that the plaintiff alleges subsequent to the signing of the settlement agreement was signed are: (1) the transfer of a subordinate out of the plaintiff's unit, Am. Compl. at 65, and (2) the defendant's request that the plaintiff submit for a fitness for duty examination. Pl.'s Opp'n at 12. These events, however, do not rise to the level of seriousness required for a hostile work environment claim, and are, accordingly, insufficient to make out a constructive discharge claim.[6] *Rooney v. Koch Air, LLC*, 410 F.3d 376, 383-83 (7th Cir. 2005) (holding that to prevail on a claim of constructive discharge, an employee must show both that a hostile work environment existed and 'that the abusive working environment became so intolerable that her resignation qualified as a fitting response'") (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004)).

First, the plaintiff does not allege that his supervisors transferred the subordinate out of the plaintiff's unit or that they requested a fitness for duty medical examination for a

---

[5] The plaintiff implicitly argues that his health problems forced him to quit and establish that he was constructively discharged. Am. Compl. ¶¶ 19, 497. But, an employer is not liable for constructive discharge when an employee's stress-related health problems, even if caused by the demands or criticism of an employer, mandates the employee's resignation. *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d. Cir. 1993). See also *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1256 (4th Cir. 1985) (stating that even when the plaintiff's superiors urged his termination and discussed the possibility of early retirement, "nothing was done [to the plaintiff] that would lead a reasonable person to quit"); *Murray-Dahnir v. Loews*, 2001 WL 357074, at *2 (S.D.N.Y. Apr. 10, 2001).

[6] Assuming *arguendo* that the 1993 and 1998 settlements do not bar the plaintiff's constructive discharge claim, the court would nevertheless grant the defendants' motion to dismiss because the plaintiff failed to exhaust his administrative remedies with respect to the constructive discharge claim. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 (2002) (explaining that a termination is a discrete act that is "easy to identify" and holding that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must" comply with the exhaustion requirements).

discriminatory reason. *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005) (explaining that a work environment is hostile when it "'is permeated with *discriminatory* intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment'") (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (emphasis added).

Second, the decision to transfer an employee is a business decision, and does not constitute an adverse employment action. *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002) (affirming the district court's determination that a supervisor's personnel decisions about the plaintiff's staff, including transferring some of the plaintiff's staff to another division, did not constitute an adverse employment action and cannot support a finding of discrimination or retaliation); see also *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1556-57 (D.C. Cir. 1997) (eschewing "judicial micromanagement of business practices").

Third, the defendants' request that the plaintiff submit to a fitness for duty examination does not create a hostile work environment. Not only is the defendants' request justified by the plaintiff's lengthy leave of absence, but the plaintiff has not offered any evidence that this request violated the defendants' sick leave policy, or that other employees taking lengthy leaves of absence were treated any differently. *McGill v. Munoz*, 203 F.3d 843, 848 (D.C. Cir. 2000) (holding that no reasonable jury could find that the defendant employer discriminated against the plaintiff because the plaintiff did not offer any direct or circumstantial evidence that her employer's request for medical documentation justifying her absences was discriminatory); *Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (stating that summary judgment is appropriate where "the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation'") (citing

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

Fourth, a plaintiff alleging constructive discharge must leave his employment within a "reasonable time" after suffering an act of discrimination. *Smith v. Bath*, 943 F.2d 164, 167 (1st Cir. 1991); *see e.g.*, *Landrau-Romero v. Banco Popular de Puerto Rico*, 212 F.3d 607, 613 (1st Cir. 2000) (holding that a plaintiff who resigned seven months after the alleged discriminatory acts could not claim constructive discharge); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989) (affirming the district court's holding that the defendant did not constructively discharge the plaintiff when the last alleged act of harassment occurred on March 27, 1985 and the plaintiff resigned on April 8, 1985); *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 756 (5th Cir. 1986) (holding that a plaintiff who resigned six months after the alleged discriminatory conduct did not make out a claim for constructive discharge). Although the plaintiff's last day on the job was February 4, 1998, Defs.' Reply at 13-14, he did not resign until well over a year later, Am. Compl. ¶ 15. Accordingly, the two allegations that are not barred by res judicata fail to set forth sufficient facts to support a hostile work environment or constructive discharge claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of August 2005.

RICARDO M. URBINA
United States District Judge
